CHARLES DAY *v.* THE ORIENT MUTUAL INSURANCE COMPANY.

Where in a policy of insurance, although "a time policy," a geographical track is declared, and the insured is specifically prohibited from entering certain ports—*Held*, that a voluntary voyage to any such prohibited port amounted to a breach of the warranty of the insured not to enter such ports, and that from that time the policy ceased to cover or protect the vessel.

*Held further*, that a permission to use one of the prohibited ports, indorsed on the policy, did not abrogate the warranty in the policy "not to use foreign ports or places in the Gulf of Mexico."

*Held further*, that the subsequent return of the vessel in safety in no way revived or restored the original obligation of the insurers, and no action can be maintained for her loss after such deviation.

APPEAL by the defendants from a judgment rendered at Special Term on the verdict of injury.

The defendant, by a policy of insurance, insured one-half the schooner *Allie Day* for one year, from 26th March, 1856, to 26th March, 1857, against perils of the sea, &c. ; the vessel was valued at $10,000. The policy contained a warranty "not to "use ports or places in Texas, except Galveston, nor foreign "ports or places in the Gulf of Mexico." The insurance was made for the benefit of the plaintiff, who was owner of this half of the schooner.

By a subsequent agreement added to the policy on 12th April, 1857, "for the additional premium of one per cent, per- "mission was given to make a voyage from New-Orleans to "Vera Cruz."

The schooner, under that permission, went to Vera Cruz, thence to Coatzacoalcos, and returned in safety to Boston, and thence to Apalachicola, where she belonged, and was there destroyed by a storm—one of the perils insured against.

The presiding judge (DALY, F. J.,) charged the jury in substance as follows : " I shall, for the purposes of this trial, instruct you that a deviation of the kind referred to in the testimony will not necessarily avoid the policy. If the vessel returns into her accustomed track in safety, and a loss afterwards

Day v. The Orient Mutual Insurance Company.

occurs, the insurers would still be liable to pay such loss. That the liability incurred by the insured under a time policy, in case of a deviation, is the risk of having to bear the loss themselves, should any occur during such deviation."

The defendants' counsel duly excepted, and the Jury, under the instructions of the Court, found as follows: That the *Allie Day* went to the port of Coatzacoalcos in violation of the warranty; that she returned in safety, and was destroyed by the perils insured against at Apalachicola, on 31st August, 1856, and, under the instructions of the Court, rendered a verdict for plaintiff for $5,811 80; and the Court ordered judgment accordingly.

*Alexander Hamilton, Jr.*, for appellants.

I. The provision in the policy "Warranted not to use foreign "ports and places in the Gulf of Mexico," is an express warranty in fact as well as in terms. Such a warranty as this is not in the nature of an excepted or excluded risk, but is a positive engagement on the part of the assured, in regard to an act within his own volition and control. *Palmer* v. *Warren Ins. Co.*, 1 Story, 360.

II. The law both in England and the United States is well settled, that an express warranty, being in the nature of a condition precedent, must be literally complied with, and, therefore, the breach of it by the assured avoids the contract, and discharges the underwriter, though the loss be wholly unconnected with such breach. *Colledge* v. *Harty*, 3 Eng. L. & Eq. 550; *Duncan* v. *Sun Fire Ins. Co.*, 6 Wend. 483; *Westfall* v. *Hudson River Fire Ins. Co.*, 2 Duer, 460; 12 N. Y. 289; *Mead* v. *Northwestern Ins. Co.*, 7 N. Y. 530; *De Hahn* v. *Hartly*, 1 Term Rep. 345; Marshall on Insurance, 248; *Lothian* v. *Henderson*, 3 Bos. & Pul. 515; 1 Arnould on Ins. 580; 1 Phillips on Ins. 241.

III. The warranty and condition here was that a certain act should not be done; this engagement on the part of the assured was a condition precedent with the underwriter in entering upon the contract. The breach of this engagement discharges the insurer from the time of its occurrence.

IV. The jury having found that the vessel used the forbidden port, in violation of the warranty, this act cannot be treated

Day v. The Orient Mutual Insurance Company.

as a deviation. Had the jury not so found, however, it would still not be a deviation; and if it were, would have discharged the insurer. (1.) A deviation cannot be predicated of a policy on time. *Union Insurance Company* v. *Tysen*, 3 Hill, 118. (2.) The permission to use Vera Cruz was an exception only from the warranty in relation to Vera Cruz, and left the warranty as to other ports and places in full force. Deviation is a violation of an " implied " condition. Here there was an " express " condition or warranty surrounding the permitted voyage, and the forbidden act must must be characterized by the latter. (3.) But, if it were a deviation, the underwriter was discharged from all liability on the policy subsequent to such deviation. *Martin* v. *Delaware Ins. Co.*, 2 Washn. C. C. 254; *Elliot* v. *Wilson*, 7 Br. Pr. Cases, 459; 1 Arnold, 349, cases there cited.

*Wright & Merrihew* for respondents.

I. This was a time policy—not one for the voyage. See *Union Ins. Co.* v. *Tysen*, 3 Hill, 118.

II. The deviation was temporary, and did not subsequently affect the risks insured against. See *Hynds* v. *Schenectady Co. Ins. Co.*, 11 N. Y. 554; *O'Neill* v. *Buffalo Fire Ins. Co.*, 3 N. Y. 122.

III. The risk was temporarily suspended, and reattached on the return of the vessel in safety. Cowen's Philips on Ins. §§ 734, 975, 989.

IV. There was a waiver of this particular warranty by the subsequent agreement.

BRADY, J.—The policy upon which this action was brought was upon the schooner " Allie Day " for one year, from the 26th March, 1856, at noon, to March 26th, 1857, at noon. It contained a warranty as follows : " Warranted not to use ports or places in Texas except Galveston, nor foreign ports and places in the Gulf of Mexico." By a subsequent agreement, April 12, 1857, for the additional premium of one per cent, permission was given to make a voyage from New Orleans to Vera Cruz. The schooner went to Vera Cruz, thence to Coatzacoalcos, in the Gulf of Mexico, thence to Boston, and thence

Day v. The Orient Mutual Insurance Company.

to Apalachicola, where she belonged, and was there destroyed by a storm. The plaintiff claims to recover because the policy was a time policy, and the deviation occasioned by the voyage to Coatzacoalcos was only temporary, and did not subsequently affect the risks insured against. For the first of these propositions we are referred to the case of *The Union Ins. Co.* v. *Tysen*, 3 Hill, 118; but COWEN, J., states in the beginning of the opinion, "It is in the nature of the policy in question that it limits the vessel to no geographical track. It is impossible, therefore, to make out a defence on the ground of a deviation in the ordinary sense of the word." But assuming the policy in question to be a time policy, the geographical track is declared, and the voyage to Coatzacoalcos was a deviation and in violation of the warranty. The question which arises upon these facts is whether the defendants are discharged by the deviation. There was no necessity for the deviation. It was voluntary, and discharged the underwriters. Their discharge does not depend upon any supposed increase of risk, but wholly on the departure of the insured from the contract of insurance. The assured has no right to substitute a different risk. 1 Phillips on Ins. 983; *Robinson* v. *Marine Ins. Co.*, 2 Johns. Rep. 89; *Huet* v. *The Phœnix Ins. Co.*, 7 Johns. Rep. 363; *Robertson* v. *The Col. Ins. Co.*, 8 Johns. 491; *Duncan* v. *Sun Fire Ins. Co.*, 6 Wend. 488; *Maryland Ins. Co.* v. *Le Roy*, 7 Cranch, 26; *Hentley* v. *Buggin*, 2 Doug. 39; *Child* v. *Sun Mut. Ins. Co.*, 3 Sandford, 26; *Kettel* v. *Wiggin*, 13 Mass. 68; *Coffin* v. *Newburyport Mar. Ins. Co.*, 9 Mass. 436; 449.

In the case of *Robertson* v. *The Columbian Ins. Co.*, *supra*, the brig Ohio was insured from New York to the island of Teneriffe, and, for an additional premium of two per cent, permission was given to proceed from Teneriffe to the Isle of May and Bonavista, and at and from thence to return to New York. The vessel arrived safely at Teneriffe, but was refused permission to enter or land any part of her cargo until after performing a quarantine of forty days, because her bill of health was not certified by the Spanish Consul at New-York. The master, being unable to land her cargo, determined to seek another port, and went to Madeira, which was the nearest port, where he arrived, landed and sold the cargo. The vessel

Day v. The Orient Mutual Insurance Company.

afterwards proceeded to the Isle of May, and sailed from thence to New York. During her passage she met with very bad weather, which much injured her, and sustained further injury by striking on a shoal near Great Egg Harbor, and finally arrived at New York. *Per curiam;* "There was no necessity for going from Teneriffe to Madeira. It was sailing on a different voyage from the one insured." "It was a voluntary deviation from the voyage mentioned in the policy. Nothing but necessity or apprehension of danger could excuse his departure from the usual and direct route to Bonavista."

The judgment should be reversed.

HILTON, J.—Coatzacoalcos was one of the prohibited ports mentioned in the policy, and the plaintiff in express terms warranted against its use. The voyage there was voluntary, after the defendants had positively refused permission to go, and had accompanied the refusal with an offer to cancel the policy and return the premium for the time unexpired, so that insurance might have been obtained elsewhere. But notwithstanding all this, the voyage was made, and there cannot be the slightest doubt that had the vessel been lost while absent upon it, the defendants would not have been answerable; and it is equally clear, both on principle and authority, that going upon it was a plain breach of the warranty contained in the policy, and put an end to the liability of the defendants as underwriters. *Kettel* v. *Wiggin*, 15 Mass. 68.

In contracts of insurance a warranty is regarded as very much like a condition precedent, and which, if violated, avoids the policy, and no recovery can thereafter be had upon it. *Mead* v. *Northwestern Ins. Co.* 3 Selden, 530 ; *Duncan* v. *Sun Fire Ins. Co.*, 6 Wend. 488 ; 494 ; *Westfall* v. *Hudson River Fire Ins. Co.*, 2 Kern. 289. In the language of Mr. Justice Johnson, in *Maryland Ins. Co.* v. *Le Roy* (7 Cranch, 26), "The discharge of the underwriters from their liability in such cases depends not upon any supposed increase of risk, but wholly on the departure of the insured from the policy of insurance." The law attaches no importance to the degree of such violation, or the consequences arising from it, and its materiality or immateriality signifies nothing, the only ques-

2

*Day v. The Orient Mutual Insurance Company.*

tion being as to the fact of the violation, and when that is shown a recovery is precluded. *De Hahn* v. *Hardy*, 1 Term R. 343; *Kemble* v. *Rhinelander*, 3 John. Cases, 134; Phillips on Ins. 181; 211.

From these views it follows that going to Coatzacoalcos being a clear breach of the warranty, from that time the policy ceased to cover or protect the vessel, and her subsequent return in no way revived or restored the defendants' original obligation as underwriters. *Westfall* v. *Hudson River Fire Ins. Co.*, 2 Duer, 490; 496.

I therefore concur with Judge Brady, that the defendants are entitled to judgment, and as the deviation is conceded, the judgment should be a final one in their favor.

DALY, F. J., concurred.